COMMUNITY HEALTH PROFESSIONALS, INC., APPELLEE,
v. LEVIN, TAX COMMR., APPELLANT.

[Cite as *Community Health Professionals, Inc. v.
Levin,* 113 Ohio St.3d 432, 2007-Ohio-2336.]

433

(No. 2006–1086—Submitted February 13, 2007—Decided May 30, 2007.)

O'DONNELL, J.

{¶ 1} In this matter, the Tax Commissioner appeals from a decision of the Board of Tax Appeals ("BTA") that reversed the Tax Commissioner and held that Community Health Professionals, Inc., used its property in furtherance of a charitable purpose and, therefore, was entitled to exemption from real estate tax in accordance with R.C. 5709.121. After review, we have determined that the decision is reasonable and lawful, and therefore, in accordance with R.C. 5717.04, it is affirmed.

{¶ 2} In 1974, the Van Wert Area Visiting Nurses Association ("Visiting Nurses") incorporated in the state of Ohio with the purpose of providing in-home nursing services for the ill, disabled, injured, and impaired. Between 1991 and 1997, Visiting Nurses conducted a reorganization in reaction to Medicaid regulations governing the reporting and reimbursement of costs and the way Medicaid reimbursed for services. As a result, Visiting Nurses changed its name to Community Health Professionals, Inc. ("CHP"), and formed two separate nonprofit corporations: VNA Comprehensive Services, Inc. ("VNA"), and Private Duty Services, Inc. ("Private Duty").

{¶ 3} CHP provides skilled, in-home nursing care and hospice services to those in the community who have approval and a care plan from a physician. VNA provides similar in-home services but focuses on Medicaid patients, while Private Duty offers nonskilled health services, including an adult daycare center. The Internal Revenue Service recognizes all three corporations as exempt from federal taxation, pursuant to the Internal Revenue Code, Section 501(a), Title 26, U.S.Code.

{¶ 4} CHP owns six acres of real estate in Defiance County, Ohio, including a two-acre parcel improved with an administration building shared by all three entities. In addition to administrative offices, a portion of the building houses Private Duty's adult daycare center that it operates for private pay and qualifying Medicaid clients. VNA and Private Duty lease space in the building from CHP, and the amount of rent equals their respective costs for utilities and depreciation.

{¶ 5} In April 2002, CHP applied for a real estate tax exemption on the two-acre parcel, in accordance with both R.C. 5709.12 and 5709.121, for the 2002 tax year. The Tax Commissioner found that CHP is a "charitable organization" but also found that it had submitted insufficient information concerning whether the three nonprofit entities provide services free of charge or on a sliding scale

regarding a patient's ability to pay. Thus, the Tax Commissioner denied CHP's application for tax exemption, concluding that it failed to show that it uses the property either exclusively for a charitable purpose, pursuant to R.C. 5709.12, or in furtherance of its charitable purpose and without the view to profit, pursuant to 5709.121.

{¶ 6} CHP appealed that decision to the Board of Tax Appeals. At a hearing conducted by the BTA, CHP's Vice President of Finance, Nancy Sink, who also supervises the accountant for VNA and Private Duty, testified about the operations of the three corporations. Sink stated that while some financial surplus exists, no individuals made a profit as a result of the business activities of the three corporations. She stated further that the corporations provide services without regard to patients' ability to pay and that no patients have been denied services due to their inability to pay.

{¶ 7} Sink also testified that although CHP accepts reimbursement from Medicare for those patients who cannot pay and from private insurance carriers, it relies upon a patient-care fund generated from activities such as bake sales and raffles. She added that CHP bills all clients in order to comply with government regulations but that it also writes off any unpaid amounts. According to her, Private Duty bills various state and federal programs directly for the services it provides, but it also accepts private-pay patients, and it relies upon the patient-care fund for those who cannot afford to pay. Sink further testified that VNA serves patients who are eligible for Medicaid, but it accepts whatever amount Medicaid pays. VNA relied upon the patient fund in 2003 to defray its costs for serving three patients who it had discovered were ineligible for Medicaid.

{¶ 8} The BTA reviewed the matter to determine whether CHP's property qualified for a tax exemption pursuant to either R.C. 5709.12 or 5709.121. With respect to the former statute, the BTA held that CHP does not use its property "exclusively for charitable purposes," because it leases its property to VNA and Private Duty. *Community Health Professionals, Inc. v. Wilkins* (May 5, 2006), BTA No. 2004–K–689, at 13. Thus, the board agreed with that portion of the Tax Commissioner's decision that denied a tax exemption for CHP's property on the basis of R.C. 5709.12. Id.

{¶ 9} However, the BTA reversed the decision of the Tax Commissioner with respect to R.C. 5709.121. In its analysis, the BTA observed, "No one questions [CHP's] ownership interest in the property * * * or, as determined by the commissioner, that appellant qualifies as a charitable institution." Id. at 12. The BTA concluded that "the subject property is indeed being used in furtherance of a charitable purpose" and that the property therefore qualified for exemption from real estate tax pursuant to R.C. 5709.121. Id. at 16.

{¶ 10} The Tax Commissioner appealed from the BTA's decision, arguing that CHP does not use its property in furtherance of a charitable purpose, because each of the three nonprofit corporations accepts reimbursement from private and government sources and writes off unpaid balances. The commissioner contends that R.C. 5709.121 does not permit a provider's property to be exempt from real estate tax unless that provider offers services at its own expense or on a sliding scale based on a patient's ability to pay. CHP responds that the record supports the BTA's conclusion that the property has been used in furtherance of its charitable purpose without a view to profit, and therefore it is exempt from taxation pursuant to R.C. 5709.121.

{¶ 11} R.C. 5717.04 provides: "If upon hearing and consideration of [the] record and evidence the court decides that the decision of the board appealed from is reasonable and lawful it shall affirm the same." In *Howard v. Cuyahoga Cty. Bd. of Revision* (1988), 37 Ohio St.3d 195, 197, 524 N.E.2d 887, we reiterated that the standard of review for a matter appealed from the BTA is whether the decision is reasonable and lawful. Further, we acknowledged in *Ameritech Publishing, Inc. v. Wilkins*, 111 Ohio St.3d 114, 2006-Ohio-5337, 855 N.E.2d 440, that " '[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support for these BTA determinations,' this court will affirm them." Id. at ¶ 5, quoting *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483.

{¶ 12} On this appeal, then, the question presented for our review is whether the Board of Tax Appeals reasonably and lawfully concluded that CHP's property is exempt from real estate taxation in accordance with R.C. 5709.121.

{¶ 13} R.C. 5709.121 provides:

{¶ 14} "(A) Real property and tangible personal property belonging to a charitable or educational institution * * * shall be considered as used exclusively for charitable or public purposes by such institution * * * if it meets one of the following requirements:

{¶ 15} " * * *

{¶ 16} "(2) It is made available under the direction or control of such institution * * * for use in furtherance of or incidental to its charitable, educational, or public purposes and not with the view to profit."

{¶ 17} In *Episcopal Parish of Christ Church, Glendale v. Kinney* (1979), 58 Ohio St.2d 199, 200–201, 12 O.O.3d 197, 389 N.E.2d 847, and in *Bethesda Healthcare, Inc. v. Wilkins*, 101 Ohio St.3d 420, 2004-Ohio-1749, 806 N.E.2d 142, ¶ 26–27, this court approved of Justice Stern's concurring opinion in *White Cross Hosp. Assn. v. Bd. of Tax Appeals* (1974), 38 Ohio St.2d 199, 203, 67 O.O.2d 224, 311 N.E.2d 862, in which he explained the relationship between R.C. 5709.12 and

5709.121: "[I]t is important to observe that, although R.C. 5709.121 purports to define the words used exclusively for 'charitable' or 'public' purposes, as those words are used in R.C. 5709.12, the definition is not all-encompassing. R.C. 5709.12 states: ' * * * Real and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation.' Thus *any* institution, irrespective of its charitable or noncharitable character, may take advantage of a tax exemption if it is making exclusive charitable use of its property. * * * The legislative definition of exclusive charitable use found in R.C. 5709.121, however, applies only to property 'belonging to,' *i.e., owned by,* a charitable or educational institution, or the state or a political subdivision. The net effect of this is that R.C. 5709.121 has no application to noncharitable institutions seeking tax exemption under R.C. 5709.12. Hence, the first inquiry must be directed to the nature of the institution applying for an exemption." (Emphasis sic.)

{¶ 18} Therefore, as this court stated in *Olmsted Falls Bd. of Edn. v. Tracy* (1997), 77 Ohio St.3d 393, 396, 674 N.E.2d 690, "in deciding whether property is exempt under the charitable use provisions of R.C. 5709.12 and 5709.121, tax authorities must first determine whether the institution seeking exemption is a charitable or noncharitable institution. * * * If the institution is charitable, its property may be exempt if it uses the property exclusively for charitable purposes or it uses the property under the terms set forth in R.C. 5709.121."

{¶ 19} In *Cincinnati Nature Ctr. Assn. v. Bd. of Tax Appeals* (1976), 48 Ohio St.2d 122, 2 O.O.3d 275, 357 N.E.2d 381, we set forth the complete test to determine whether property is exempt from real estate taxation in accordance with R.C. 5709.121. There, we stated: "To fall within the terms of R.C. 5709.121, property must (1) be under the direction or control of a charitable institution or state or political subdivision, (2) be otherwise made available 'for use in furtherance of or incidental to' the institution's 'charitable * * * or public purposes,' and (3) not be made available with a view to profit." Id. at 125, 2 O.O.3d 275, 357 N.E.2d 381, quoting R.C. 5709.121.

{¶ 20} Applying the *Cincinnati Nature Ctr.* test to the instant matter, the Tax Commissioner does not dispute that CHP owns and controls the property and that it is a charitable institution; the Tax Commissioner found that CHP is a charitable institution, and in its decision, the BTA stated that "[n]o one questions * * * that [CHP] qualifies as a charitable institution." *Community Health Professionals,* BTA No. 2004–K–689, at 12. In addition, the Tax Commissioner failed to challenge the charitable nature of CHP in the notice of appeal to this court, as required by R.C. 5717.04. Therefore, the only question before us concerns whether the property has been used in furtherance of or incidently to CHP's purpose and not with the view to profit.

{¶ 21} When considering R.C. 5709.121 and the question of whether a charitable institution uses its property in furtherance of or incidently to its charitable purposes, this court focuses on the relationship between the actual use of the property and the purpose of the institution. For example, in *Ohio Masonic Home v. Bd. of Tax Appeals* (1977), 52 Ohio St.2d 127, 6 O.O.3d 343, 370 N.E.2d 465, we considered whether a nonprofit nursing home used certain land "in furtherance of or incidental to its charitable purpose" by operating it as a farm in order to raise funds. We held that the BTA properly denied the requested tax exemption for the farm because "farming remains functionally removed from appellant's charitable purpose." Id. at 130, 6 O.O.3d 343, 370 N.E.2d 465. Similarly, in *Am. Chem. Soc. v. Kinney* (1982), 69 Ohio St.2d 167, 23 O.O.3d 197, 431 N.E.2d 1007, we concluded that the BTA, in failing to grant a real estate tax exemption, had "ignored the integral connection which has been shown to exist between [the charitable institution's] use of the land in question and [its] purpose for existence." Id. at 171, 23 O.O.3d 197, 431 N.E.2d 1007; see, also, *Girl Scouts–Great Trail Council v. Levin,* 113 Ohio St.3d 24, 2007–Ohio–972, 862 N.E.2d 493.

{¶ 22} We acknowledge the position of the Tax Commissioner that CHP does not use its property in furtherance of or incidently to its charitable purposes, because it charges patients for services rendered, accepts payment from private and government sources, writes off unpaid amounts, and does not offer its services free of charge or in accordance with a sliding scale. However, these circumstances concern the question of whether CHP is a charitable institution, which, as we have emphasized, is not before this court. Moreover, to the extent that the Tax Commissioner's argument relates to the use of this property, we stated in *Bethesda Healthcare,* 101 Ohio St.3d 420, 2004–Ohio–1749, 806 N.E.2d 142, that "[w]hether an institution renders sufficient services to persons who are unable to afford them to be considered as making charitable use of property must be determined on the totality of the circumstances." Id. at ¶ 39. We also stated there that "we must consider the overall operation being conducted." Id. at ¶ 35.

{¶ 23} In the instant case, CHP, VNA, and Private Duty use the property as administrative offices for their respective programs, and Private Duty uses a portion of the property as a daycare center for the elderly. The evidence in the record here demonstrates that the three corporations share a common origin, that they have overlapping resources, services, and purposes, that they provide services without regard to a patient's ability to pay, and that no patients have been denied services due to their inability to pay. Based on the totality of the evidence before the BTA, we conclude that it reasonably and lawfully determined that "the subject property is indeed being used in furtherance of a charitable purpose." BTA No.2004–K–689, at 16. Nor does the fact that VNA and Private Duty pay a rent commensurate with the costs of utilities and depreciation

undermine this conclusion in light of the relationship between the three entities. As we stated in *Bowers v. Akron City Hosp.* (1968), 16 Ohio St.2d 94, 96, 45 O.O.2d 445, 243 N.E.2d 95, "It is the use of property rather than the fact that revenues are collected and received from property which is controlling," citing *Vick v. Cleveland Mem. Med. Found.* (1965), 2 Ohio St.2d 30, 31 O.O.2d 16, 206 N.E.2d 2. In addition, the evidence in the record does not support the conclusion that CHP, VNA, or Private Duty uses the property with a view to profit. See id.

{¶ 24} The evidence before the BTA supports its conclusion that CHP used its property in furtherance of its charitable purpose without a view to profit and that the property is therefore exempt from real estate taxation in accordance with R.C. 5709.121. That decision is reasonable and lawful and conforms with R.C. 5717.04; therefore, it is affirmed.

Decision affirmed.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, LANZINGER and CUPP, JJ., concur.

---

Young, Taylor & Yarger and Kevin H. Taylor, for appellee.

Marc Dann, Attorney General, and Janyce C. Katz, Assistant Attorney General, for appellant.