**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ganoom v. Franklin Cty. Bd. of Elections,* Slip Opinion No. 2016-Ohio-5864.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-5864

THE STATE EX REL. GANOOM *v.* FRANKLIN COUNTY

BOARD OF ELECTIONS ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ganoom v. Franklin Cty. Bd. of Elections,* Slip Opinion No. 2016-Ohio-5864.]**

*Elections—Mandamus—City charter imposes clear legal duty on city—Writ granted as to city—Writ denied as to board of elections.*

(No. 2016-1241—Submitted September 13, 2016—Decided September 16, 2016.)

IN MANDAMUS.

_____

**Per Curiam.**

**{¶ 1}**   In this expedited election case, relator, Omar Ganoom, seeks a writ of mandamus compelling the city of Upper Arlington[1] to conduct an election to fill a seat on the city council.  For the reasons discussed below, we grant the writ.

*Background*

_____

[1] "Upper Arlington" here refers to respondents the city of Upper Arlington, the Upper Arlington City Council, and City Manager Theodore J. Staton.

**{¶ 2}** The term of office for an Upper Arlington City Council member is four years. In November 2015, Mike Schadek was reelected to his seat on the council. Four months later, in March 2016, he resigned his council seat. On May 9, 2016, the Upper Arlington City Council appointed Sue Ralph as Schadek's replacement.

**{¶ 3}** Ganoom contends that there must be an election in November 2016, with the winner to serve in the vacated council seat until Schadek's term expires in January 2020, and he alleges that he has taken all the steps necessary to appear on the ballot as a candidate. Ralph has also submitted nominating petitions (apparently out of an abundance of caution). Upper Arlington contends that according to the city charter, no election is required to fill the seat.

*The motion to amend*

**{¶ 4}** On August 18, 2016, Ganoom filed this expedited election complaint seeking a writ of mandamus against the Franklin County Board of Elections and the Upper Arlington respondents. The complaint did not include an affidavit, as required by S.Ct.Prac.R. 12.02(B)(1). The next day, Ganoom filed an affidavit, in which he stated that the matters in the complaint were true, based on his personal knowledge. However, the affidavit indicates that it was served on respondents by ordinary U.S. mail; it therefore did not comply with S.Ct.Prac.R. 12.08(C), which requires all documents in expedited election cases to be "served on the date of filing by personal service, facsimile transmission, or e-mail."

**{¶ 5}** Respondents filed answers pointing out the lack of an affidavit accompanying the complaint and Ganoom's failure to properly serve the affidavit that he filed on August 19. Ganoom and Upper Arlington briefed the case on the merits, and on September 6, 2016, along with his reply brief, Ganoom filed and properly served a motion for leave to amend his affidavit, along with the new affidavit.

**{¶ 6}** The complaint in an original action must "contain a specific statement of facts upon which the claim for relief is based [and] an affidavit specifying the details of the claim." S.Ct.Prac.R. 12.02(B)(1). In opposition to the motion, Upper Arlington asserts that the amended affidavit is defective because it does not specify the details of the claim. But in this case, there are no additional "details" for Ganoom to submit by way of affidavit. The case presents a single, discrete question of law: the proper interpretation of the Upper Arlington City Charter. We therefore see no defect in Ganoom's affidavit.

**{¶ 7}** Alternatively, Upper Arlington and the board of elections argue that Ganoom unreasonably delayed submitting his motion. But since the parties all understood and briefed the legal issue and Ganoom's affidavit provided no additional legal or factual information, we hold that respondents suffered no prejudice from the alleged delay.

**{¶ 8}** We grant the motion for leave to amend.

*The Upper Arlington City Charter*

**{¶ 9}** The Upper Arlington City Council consists of seven members serving four-year terms. Elections for these seats are held in odd-numbered years, with three seats on the ballot in some years and four seats in others.

**{¶ 10}** The charter provision in controversy is the second paragraph of Section IV:

> A vacancy in the Council shall be filled by a majority vote of the remaining Council Members. If an appointment occurs after June 30 in the final two years of a term, then Council shall make the appointment for the unexpired term. Otherwise the appointment shall be until the second Monday in January following the next general election.

Pursuant to the third sentence quoted above, the Upper Arlington City Council appointed Ralph to fill Schadek's vacant seat until the second Monday in January following the general election.

{¶ 11} But what happens then? The charter does not expressly state that the vacated council seat's unexpired term must appear on the next general election ballot. For this reason, Upper Arlington argues that "there is no plausible reading of Section IV other than that City Council is to make consecutive appointments to fill vacant Council seats." In other words, the city council claims that when Ralph's appointment expires in January 2017, it can simply reappoint her—and continue appointing her as many times as is necessary until Schadek's original term expires in 2020.

{¶ 12} Upper Arlington's interpretation of this provision is illogical. The fact that the second paragraph of Section IV of the charter ties the duration of the appointment to the next general election strongly suggests that the intent is to fill the seat at that election. Upper Arlington's position fails to account for this language.

{¶ 13} Moreover, Upper Arlington's position that it can fill a vacant seat by appointment multiple times would lead to an absurd result. A council seat became *vacant* when Schadek unexpectedly resigned. And when Ralph's appointment expires in January 2017, according to Upper Arlington, there will be another vacancy, such that the city council can make another appointment. But if the expiration of a *term* creates a vacancy, then, in theory, city council could carry on making appointments in perpetuity and never conduct another election.

{¶ 14} But the most persuasive reason to reject Upper Arlington's position is that its interpretation of Section IV, Paragraph 2 of the city charter creates a conflict with the very next paragraph. Section IV, Paragraph 3 provides:

> No person shall hold the office of Council Member for a period longer than two consecutive terms of four years. For purposes of this section, any appointment *or election for less than a full four-year term* shall not count against the two-term limitation.

(Emphasis added.) If Upper Arlington's argument were correct, there could never be an election for less than a full four-year term. This paragraph of the charter only makes sense if it is possible for a member to be elected to the unexpired portion of a term.

**{¶ 15}** The charter imposes a clear legal duty upon the city of Upper Arlington to fill Schadek's seat for its unexpired term at the November 2016 election.

*Conclusion*

**{¶ 16}** The Upper Arlington City Council has authority, by resolution, to order a special election at any time. We hereby grant a writ of mandamus ordering the Upper Arlington respondents to take whatever steps are necessary to place the council seat on the November 2016 ballot. Because this matter has not yet reached the Franklin County Board of Elections, we grant no relief against the board.

Motion to amend granted,

and writ granted in part

and denied in part.

PFEIFER, FRENCH, and O'NEILL, JJ., concur.

O'CONNOR, C.J., concurs with an opinion.

LANZINGER and KENNEDY, JJ., concur in judgment only.

O'DONNELL, J., dissents, with an opinion.

_____

**O'CONNOR, C.J., concurring.**

{¶ 17} I fully concur in the per curiam opinion. I write separately to explain the flaws in the dissenting opinion's analysis of the Upper Arlington City Charter.

{¶ 18} The dissent suggests that the reference to "the next general election" in Section IV of the charter "unmistakably" refers to the next general election *for municipal office*, which will not occur until November 2017. Dissenting opinion at ¶ 30. But in order to reach the desired result, the dissent must add words to the charter that are not there: the words "*for municipal office*" are conspicuously absent from Section IV.

{¶ 19} Section IV is the only charter provision to use the phrase "general election." Section VII, which governs elections, refers to "[r]egular municipal elections" and "special municipal elections." If the drafters of the charter had intended "general election" in Section IV to mean the same thing as "regular municipal election" in Section VII, they would have used the same term in both places. They did not.

{¶ 20} "General election" is not a defined term in the city charter, but it *is* a defined term in the Ohio Revised Code. It means "the election held on the first Tuesday after the first Monday in *each* November." (Emphasis added.) R.C. 3501.01(A). Nothing in the charter purports to alter or supersede this definition.

{¶ 21} The dissent's analysis turns on the inclusion of a word, "municipal," that is not in the statute and not in the controlling charter provision. But we may not include language in a statute that the General Assembly omitted. Rather, when construing a statute, we must give effect to all the enacted language, *Church of God in N. Ohio, Inc. v. Levin*, 124 Ohio St.3d 36, 2009-Ohio-5939, 918 N.E.2d 981, ¶ 30, and we may not enlarge the statutory language, *Weaver v. Edwin Shaw Hosp.*, 104 Ohio St.3d 390, 2004-Ohio-6549, 819 N.E.2d 1079, ¶ 13, quoting *Wachendorf v. Shaver*, 149 Ohio St. 231, 78 N.E.2d 370 (1948), paragraph five of the syllabus (statutes " 'may not be restricted, constricted, qualified, narrowed, enlarged or

abridged; significance and effect should, if possible, be accorded to every word, phrase, sentence and part of an act' ' ").

{¶ 22} Finally, the dissent draws an unconvincing parallel with the constitutional procedure for filling judicial vacancies. When a judicial vacancy occurs, the replacement election does not automatically occur at the next general election; rather, it waits until the next general election in an even-numbered year, when judicial elections are held. According to the dissent, the same rule should apply to council elections in Upper Arlington.

{¶ 23} But the same rule does not apply, because the language in the Constitution is significantly different from that of the Upper Arlington City Charter. When a judicial vacancy occurs, the governor appoints someone to hold the seat until a successor is elected for the unexpired term "at the first general election *for the office which is vacant* that occurs more than forty days after the vacancy shall have occurred." (Emphasis added.) Article IV, Section 13, Ohio Constitution. Thus, the Constitution expressly states that the replacement election does not occur until the next time judicial offices appear on the ballot in the ordinary course.

{¶ 24} To make the Upper Arlington City Charter and the Ohio Constitution say the same thing, the dissent must add language to the former or delete language from the latter. It has the power to do neither. The deletion of the people's language in the constitutional provision is as improper as the inclusion of statutory language not provided by the drafters of the Upper Arlington City Charter or by the General Assembly. *State ex rel. Summit Cty. Republican Party Executive Commt. v. Brunner*, 118 Ohio St.3d 515, 2008-Ohio-2824, 890 N.E.2d 888, ¶ 26 (O'Donnell, J., concurring), citing *Columbus–Suburban Coach Lines, Inc. v. Pub. Util. Comm.*, 20 Ohio St.2d 125, 127, 254 N.E.2d 8 (1969) ("it is the duty of this court to give effect to the words used, not to delete words used or to insert words not used"). *See also Church of God in N. Ohio, Inc.*, 124 Ohio St.3d 36, 2009-Ohio-5939, 918 N.E.2d 981, at ¶ 30; *Weaver*, 104 Ohio St.3d 390, 2004-Ohio-6549,

819 N.E.2d 1079, ¶ 13, quoting *Wachendorf*, 149 Ohio St. 231, 78 N.E.2d 370, at paragraph five of the syllabus; *State v. Rose*, 89 Ohio St. 383, 387, 106 N.E. 50 (1914) ("Where there is no doubt, no ambiguity, no uncertainty as to the meaning of the language employed by the Constitution makers, there is clearly neither right nor authority for the court to assume to interpret that which needs no interpretation and to construe that which needs no construction").

{¶ 25} Accordingly, I concur in the per curiam opinion and judgment granting the writ.

_____

**O'DONNELL, J., dissenting.**

{¶ 26} Respectfully, I dissent.

{¶ 27} Because the Upper Arlington City Council appointed Sue Ralph to a seat on the city council for an unexpired term that in my view will end on the second Monday in January 2018 pursuant to the city's charter, I would deny Omar Ganoom's request for a writ of mandamus compelling Upper Arlington to conduct an election in November 2016 to fill that seat.

{¶ 28} The Upper Arlington charter provides for a vacancy on the city council to be filled by a majority vote of the remaining council members, and Section IV of the charter states that "[i]f an appointment occurs after June 30 in the final two years of a term, then Council shall make the appointment for the unexpired term." Ralph's appointment did not occur after June 30 in the final two years of the term, so that provision does not apply.

{¶ 29} The Upper Arlington charter then provides, "Otherwise the appointment shall be until the second Monday in January following the next general election." Thus, we are to consider what the phrase "the next general election" means in that section of the charter.

{¶ 30} In my view, this language refers to the next general *municipal* election, because city council members are not elected in even numbered years but

rather run in general elections conducted in odd numbered years. R.C. 3501.01(B). And in this case, the next general election for a councilmanic position in the city of Upper Arlington will be held in November 2017. Notably, state and county elections are held in even numbered years, R.C. 3501.01(C), and there is no language in the Upper Arlington City Charter that requires a special election for filling a vacant seat on the city council. Rather, the charter's language is plain: "the appointment shall be until the second Monday in January following the next general election." This reference, in my view, is unmistakably to the next general election for municipal office, because city council members are elected at general elections in odd numbered years. The concurring opinion mischaracterizes this analysis as somehow rewriting the charter. It does not. It is the logical, common sense approach to determining the meaning of "general election" in order to decipher that phrase in the context of a councilmanic appointment.

{¶ 31} The charter language here is very similar to the language contained in Article IV, Section 13 of the Ohio Constitution with respect to filling a vacancy in the office of judge:

> the vacancy shall be filled by appointment by the governor, until a successor is elected and has qualified; and such successor shall be elected for the unexpired term, at *the first general election for the office which is vacant* that occurs more than forty days after the vacancy shall have occurred.

(Emphasis added.)

{¶ 32} The caustic reference in the concurring opinion suggesting an unconvincing parallel with the constitutional procedure for filling judicial vacancies fails to comprehend the analogy because it gets into the minutia of words and misses the big picture. The quarrel is not about adding words to the charter or

deleting words from the Constitution. The exact language of the Constitution is quoted above. Rather, the point is that individuals appointed to *municipal* judgeships stand for office at the next *municipal* election, and those appointed to county judgeships, whether trial or appellate, run in countywide elections in even numbered years. The point is that those appointed to municipal offices do not run in even numbered years and those appointed to county judgeships do not run in odd numbered years.

{¶ 33} In a confused and ill-informed analysis, the majority finds support for holding an election for an Upper Arlington City Council position in an off-year election. This confuses the elective process and, in my view, misconstrues the phrase "general election" by requiring a councilmanic appointee to stand for election in 2016, an even numbered year, when municipal elections are not normally held. The charter's reference to "the next general election" is thus properly construed to mean the next general election for municipal office, given that an appointee to that office would then have an opportunity to file as a candidate for election without being forced to run at a time when other municipal office holders are not being elected.

{¶ 34} The majority's view is therefore contrary to the legislative scheme for conducting municipal elections and to the method that is followed and is well understood in the judicial arena, which requires an appointee to stand for election at the next general election for that office.

{¶ 35} The majority also states that "[t]he Upper Arlington City Council has authority, by resolution, to order a special election at any time," majority opinion at ¶ 16, but the language of the charter says the council "*may*, by resolution, order a special election at any time * * *." (Emphasis added.) Thus, it is a discretionary power of the council, and the council cannot be compelled by mandamus to exercise its discretion to order a special election.

{¶ 36} In order to issue a writ of mandamus, there must be a clear legal right to the relief sought and a clear legal duty on the part of the council to provide that relief. The request for mandamus fails in this case, because there is no clear legal right to the conduct of a municipal election in an even numbered year, and there is no mandatory duty that council can be compelled to perform because its authority to order a special election is discretionary, not mandatory. Therefore, the relator's request for a writ should be denied. And for these reasons, I dissent from the majority's conclusion.

_____

James C. Becker, for relator.

Ron O'Brien, Franklin County Prosecuting Attorney, and Nick A. Soulas Jr., Harold J. Anderson III, and Timothy A. Lecklider, Assistant Prosecuting Attorneys, for respondent Franklin County Board of Elections.

Upper Arlington City Attorney's Office, Jeanine Hummer, Thomas K. Lindsey, and Thaddeus M. Boggs; McTigue & Colombo, L.L.C., Donald J. McTigue, J. Corey Colombo, and Derek S. Clinger; and Vorys, Sater, Seymour & Pease, L.L.P., and John J. Kulewicz, for respondents City of Upper Arlington, Upper Arlington City Council, and Upper Arlington City Manager Theodore J. Staton.

_____