In re Estate of Weiler: The Planned Parenthood Assn. of Columbus, Ohio, Inc. et al., Appellants, v. Tax Commissioner of Ohio, Appellee.

[Cite as Planned Parenthood Assn. v. Tax Commr., 5 Ohio St. 2d 117.]

118

(No. 39476—Decided February 16, 1966.)

*Messrs. Vorys, Sater, Seymour & Pease, Mr. James P. Kennedy* and *Mr. John A. Weedon,* for appellants.

*Mr. William B. Saxbe,* attorney general, and *Mr. Jon Ziegler,* for appellee.

SCHNEIDER, J.  The sole question which concerns us in this appeal is whether The Planned Parenthood Association of Columbus was, on November 1, 1959, an institution for purposes only of public charity within the purview of Section 5731.09, Revised Code.[1]

The Tax Commissioner contends that, by the adoption of a code of regulations and by common practice, the purposes of Parenthood have been altered, enlarged and even disregarded in that its primary activity now consists of, as stated in his brief, "propagandizing and dispensing contraceptive devices to all married and about-to-be married women, irrespective of the women's economic ability, mental ability and physical ability to have children."  This description is, of course, disputed by Parenthood.

There is no dispute, however, that its services are, again in the words of counsel for appellee, "open and available to any-

---

[1]Section 5731.09, Revised Code, as amended effective August 3, 1959, and in effect at the date of this opinion, reads in pertinent part as follows:

"The succession to any property passing to or for the use of the state, or to or for the use of a municipal corporation or other political subdivision thereof for exclusively public purposes, or any public institution of learning or any public hospital not for profit or any established religious organization, within this state, or institution of learning or any public hospital not for profit or any established religious organization or any community trust or community foundation for purposes only of public charity, within any state of the United States, which does not impose an inheritance, estate, or transfer tax on property given, devised, or bequeathed by a resident thereof to an institution of learning, or any public hospital not for profit, or any established religious organization, or any community trust or community foundation for purposes only of public charity within this state, or to or for the use of an institution for purposes only of public charity carried on in whole or in a substantial part within this state, or to an institution or organization not for profit whose exclusive purpose is printing and distributing the Bible, or the succession to any property resulting from a testamentary provision for the performance of religious services or rites shall not be subject to Section 5731.02 of the Revised Code. * * *"

one who wants them, irrespective of race or religion or financial level, [and] irrespective of their [sic] social economic group or ability to pay * * *" for the services received. There is no dispute, moreover, that physical examinations and dispensation of contraceptives are made only by a licensed physician and within the physician-patient relationship. Furthermore, there is no apparent dispute that, in the year 1959, 13 per cent of the recipients of Parenthood's services were charged no fee, and that only 11 per cent were charged the maximum fee of $10 for all of the interviews, lectures, instructions, examinations, and prescriptions which constitute the activities with respect to any one individual woman.

Viewing these facts most strongly against Parenthood and as summarized by counsel for appellee, we immediately conclude that no question remains that Parenthood is a public institution (*American Committee of Rabbinical College of Telshe, Inc.*, v. *Board of Tax Appeals*, 156 Ohio St. 376), and that its activities do not offend the public policy of the state as expressed by Sections 2905.32, 2905.33, 2905.34 and 2905.37, Revised Code. Those statutes, in effect on November 1, 1959, enunciate a policy only against the irresponsible and indiscriminate dissemination of contraceptive information and devices outside of the physician-patient relationship.

Do Parenthood's activities and services amount to charity? When the last syllable has been uttered in the quest to define charity (and the attempts have been legion[2]) this hallmark will survive: charity is the attempt in good faith, spiritually, physically, intellectually, socially and economically to advance and benefit mankind in general, or those in need of advancement and benefit in particular, without regard to their ability to supply that need from other sources and without hope or expectation, if not with positive abnegation, of gain or profit by the donor or by the instrumentality of the charity.

---

[2]4 Scott on Trusts 2 Ed. 2632, Section 368.1; Restatement of Trusts 2d 246 and 257, Sections 368 and 374; 9 Ohio Jurisprudence 2d 79 and 90, Sections 2 and 13; *Gerke, Treas.*, v. *Purcell*, 25 Ohio St. 229, 243, 244; *In re Estate of Taylor*, 139 Ohio St. 417; *In re Estate of Seaman*, 166 Ohio St. 51; *In re Estate of Miller*, 171 Ohio St. 202; *In re Estate of Oglebay*, 162 Ohio St. 1; *In re Estate of Bremer*, 166 Ohio St. 233.

It is unnecessary for universal agreement to exist that the objectives or the means employed will, in fact, result in the benefits. It is sufficient that the purpose is conscientiously calculated to promote man's welfare. Indeed, that is the sublime purpose of the forms of government established by our national and state constitutions. Yet, in the concourse of human opinion there is no more consensus that those forms of government so constituted operate in fact in mankind's best interests than there is even provincial agreement that this or that specific pursuit in the name of charity in fact accomplishes any ultimate good.

"To illustrate, many college and school textbooks adopt the Darwinian theory of evolution to explain the origin of man and for that reason such textbooks are not acceptable to those who hold the view of the fundamentalist who accepts only the literal Biblical account of man's creation. But, it would certainly not be contended that any institution engaged exclusively in the gratuitous distribution of such textbooks to all those who will accept them, is not a charitable institution engaged in *public charity*." (Judge Hart in *In re Estate of Taylor*, 139 Ohio St. 417, 426.)

Accordingly, an inquiry to determine whether the requisites of a statute granting tax exemption to an existing charitable establishment or to a gift thereto have been satisfied is not concerned with the approval or disapproval of the methods of that establishment so long as they offend neither the public peace nor a specific policy which the legislative or judicial branches are constitutionally empowered to announce.

Similarly, a judicial review which confirms or rejects the findings of that inquiry does not place in debate the merits of the enterprise seeking the advantage of the statute.

That some or even many of the beneficiaries have the means, in whole or in part, to purchase the services or goods received in the market place or that some consideration is exacted from them on receipt of the benefits has never, nor should it ever, tarnish the charitable character of the enterprise. *Davis, Aud.*, v. *Cincinnati Camp Meeting Assn.*, 57 Ohio St. 257. Today, in part as a result of the prevalence of medical insurance plans, a substantial proportion of the patients of the average privately

owned nonprofit but publicly operated general hospital possess the financial resources to defray the cost of care and treatment of their needs. Both the patients and the tax-exempt hospital are the recipients of a gain or profit to the extent of the tax exemption of the property of the institution. This inexorable fact defeats neither the charity nor the tax exemption. *Vick* v. *Cleveland Memorial Medical Foundation*, 2 Ohio St. 2d 30; *Taylor, Admr.*, v. *Protestant Hospital Assn.*, 85 Ohio St. 90.

We find that The Planned Parenthood Association of Columbus, on the record before us, is an "institution for purposes only of public charity." Therefore, the judgment of the Court of Appeals affirming that of the trial court that the testamentary and inter vivos gifts to Parenthood were taxable successions is reversed.

*Judgment reversed.*

TAFT, C. J., MATTHIAS and O'NEILL, JJ., concur.
ZIMMERMAN and BROWN, JJ., concur in the judgment only.
HERBERT, J., dissents.