Lundberg Stratton, J.,
dissenting.
{¶ 34} I believe that the Church of God in Northern Ohio (“COG”) uses its property exclusively for the charitable purposes of providing public worship and community programs and is therefore exempt from taxation under R.C. 5709.12(B). Accordingly, I respectfully dissent.
{¶ 35} Under R.C. 5709.12, property is exempt from taxation if “(1) the property belongs to an institution, and (2) the property is being used exclusively for charitable purposes.” Highland Park Owners, Inc. v. Tracy (1994), 71 Ohio St.3d 405, 406-407, 644 N.E.2d 284. It is undisputed that COG is an institution. The question here is whether COG uses the property exclusively for charitable purposes.
*46 Property used for administrative support of off-premises charitable activities qualifies for a charitable tax exemption
{¶ 36} In determining whether a property qualifies for a charitable-use tax exemption, the analysis usually involves examining the use of the property that the applicant seeks to exempt from taxation. See Case W. Res. Univ. v. Wilkins, 105 Ohio St.3d 276, 2005-Ohio-1649, 825 N.E.2d 146 (property leased by a college to a private sorority to house only sorority members was not exempt from taxation, because the use was not an educational use under R.C. 5709.121(A)(2)). However, on several occasions this court has recognized that property used by an institution for administrative support of off-premises charitable activities qualifies for a charitable exemption. Girl Scouts-Great Trail Council v. Levin, 113 Ohio St.3d 24, 2007-Ohio-972, 862 N.E.2d 493 (use of Girl Scouts’ administrative building to support scouting activities constituted charitable use); Community Health Professionals v. Levin, 113 Ohio St.3d 432, 2007-Ohio-2336, 866 N.E.2d 478 (use of an administrative building by a nonprofit company to manage and support subsidized in-home care constituted charitable use); Herb Soc. of Am., Inc. v. Tracy (1994), 71 Ohio St.3d 374, 376, 643 N.E.2d 1132 (the Herb Society sponsored numerous charitable activities that occurred off the premises, including organizing and conducting local symposiums and maintaining herb gardens throughout the United States).
{¶ 37} In the instant case, the BTA determined that “[a]s appellant is a church, all of its support functions will necessarily be related to religion and the promotion of religion.” Church of God in N. Ohio, Inc. v. Wilkins (Nov. 25, 2008), BTA No. 2007-N-102, at 11. Thus, the question becomes whether the activities performed in COG’s churches constitute charitable activities.
Preparation and dissemination of a religious message is a charitable activity
{¶ 38} We have held, “ ‘[CJharity/ in the legal sense, is the attempt in good faith, spiritually, physically, intellectually, socially and economically to advance and benefit mankind in general, or those in need of advancement and benefit in particular, without regard to their ability to supply that need from other sources, and without hope or expectation, if not with positive abnegation, of gain or profit by the donor or by the instrumentality of the charity.” (Emphasis added.) Planned Parenthood Assn. of Columbus, Inc. v. Tax Commr. (1966), 5 Ohio St.2d 117, 34 O.O.2d 251, 214 N.E.2d 222, paragraph one of the syllabus.
{¶ 39} In True Christianity Evangelism v. Zaino (2001), 91 Ohio St.3d 117, 742 N.E.2d 638, a religious organization sought a tax exemption under R.C. 5709.12(B) for a house that it used to prepare and disseminate religious materials. Jeffery Botzko, the organization’s president, testified:
*47 {¶ 40} “ ‘My goal is to inspire, enthuse, or to badger people into actually reading the Bible and finding out what it says and living up to its standards. Or even apart from that, just encourage them to seek the highest moral standards they can from whatever source they will accept. Like I tried to encourage people who believe in the Koran to find the best moral standards in it and see if there is higher things in the Bible that you can go above what the Koran says.
{¶ 41} “ ‘I try to promote true Christianity, but if I can’t do that, I still try to promote the best moral standards part.’ ” (Emphasis added.) Id. at 119, 742 N.E.2d 638.
{¶ 42} The BTA in True Christianity Evangelism found that the primary use of the property was “(1) ‘an evangelistic one’ and (2) for ‘the preparation and dissemination of a religious message.’ ” Id. We held: “The information disseminated by appellant attempts to encourage people to read the Bible and to live up to its moral standards. These efforts are a good-faith attempt to disseminate information to spiritually advance and benefit mankind in general. Under the definition of charity followed by this court, appellant’s activities constitute charitable purposes.” Id. at 120, 742 N.E.2d 638. Thus, we held that appellant’s property was exempt from taxation under R.C. 5709.12(B).
{¶ 43} In the instant case, the COG uses its churches for worship and to promote certain outreach programs. I believe that these activities and the activities in True Christianity Evangelism are similar both in substance and in purpose. In both, the applicant prepares and disseminates a religious message. And both do so for the purpose of spreading the gospel. Moreover, in the instant case, the outreach programs, such as the backpack program, provide assistance to needy children by providing them with backpacks and school supplies, which is a charitable activity. Thus, I would hold that the activities undertaken in COG’s churches constitute charitable activities akin to those in True Christianity Evangelism.
{¶ 44} The majority reasons that public worship is not per se a charitable activity in large part because worship reaches primarily church members and not the general public. In so holding, the majority relies on Olmsted Falls Bd. of Edn. v. Tracy (1997), 77 Ohio St.3d 393, 397, 674 N.E.2d 690, for the proposition that an “organization’s activities that primarily benefit members rather than general public do not qualify as charitable.”
{¶ 45} In Olmsted Falls, the Donauschwaben German American Cultural Center (“Donauschwaben”) owned 20 acres of land, which contained a small lake, soccer fields, tennis courts, a picnic area, a playground, and several buildings, including a cultural center. Id. at 393, 674 N.E.2d 690. The cultural center contained a bar and lounge, an outdoor beer garden, a dance floor, a bowling alley, meeting rooms, etc. Id. Donauschwaben organized many groups including *48 a soccer club, tennis club, band, ski club, bowlers’ club, etc. Membership was limited to 1,000 members and members had to pay dues. Id. at 393-394, 674 N.E.2d 690.
{¶ 46} Donausehwaben sought an exemption for the property under R.C. 5709.12 and 5709.121. Id. at 395, 674 N.E.2d 690. The court held that Donauschwaben did not use the property exclusively for charitable purposes primarily for two reasons: (1) participation in Donauschwaben’s activities was limited to dues-paying members and (2) social and fraternal events such as dinners and carnivals are not charitable activities. Id. at 397, 674 N.E.2d 690.
{¶ 47} I believe that Olmsted Falls Bd. of Edn. is distinguishable from the instant case because COG’s churches are open to the public and no one attending church is required to pay any dues or fees. Further, COG’s churches are not social clubs but are places of worship in which to spread the gospel and are also used to provide outreach programs that assist the needy. Finally, COG seeks to spread the gospel beyond the doors of existing churches. The bishop for COG testified that the church wants “to reach as many people as we can with the gospel and the message.” He stated that “[t]he local churches have an outreach mentality.” “[W]e encourage our local constituents to be part of the global aspect, even though they are from a local standpoint, but from a global standpoint, to become involved in the world of evangelism. We do have a very strong emphasis on that.” The bishop stated, “We continually are preparing and projecting where we want to plant churches in communities that will make an impact and a difference. So we have an ongoing program of resources that we develop for that.”
{¶ 48} Moreover, in Herb Soc. of Am., Inc. v. Tracy, we held: “So long as an institution is operated without any view to profit and exclusively for a charitable purpose, it is a charitable institution. It need not be open generally to the public if it promotes the lawful advancement of the charitable purpose.” 71 Ohio St.3d at 376, 643 N.E.2d 1132, citing Am. Commt. of Rabbinical College of Telshe, Inc. v. Bd. of Tax Appeals (1951), 156 Ohio St. 376, 46 O.O. 217, 102 N.E.2d 589, paragraphs one and two of the syllabus. Even though membership in the Herb Society was not generally open to the public, the court nevertheless held that it was engaged in a charitable activity by tending herb gardens, lecturing, and distributing literature, sponsoring symposiums, and endowing research grants, which resulted in the betterment of mankind. Id. Similarly, even though the churches have members, their services are open to the public and result in the betterment of mankind by spreading the gospel to the public and by providing assistance to the needy.
Conclusion
{¶ 49} I would hold that COG’s property plays an integral role in supporting the charitable activities of public worship and providing outreach programs within *49 the congregation’s churches. Consequently, I would hold that COG’s property is used exclusively for a charitable purpose, and therefore is exempt from taxation under R.C. 5709.12(B). Therefore, I respectfully dissent.
Kennedy & Associates Co., L.P.A., David R. Kennedy, and Alan B. Forrest, for appellant.
Richard Cordray, Attorney General, and Ryan P. O’Rourke, Assistant Attorney General, for appellee.
Pfeifer and O’Donnell, JJ., concur in the foregoing opinion.