[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Innkeeper Ministries, Inc. v. Testa,* Slip Opinion No. 2016-Ohio-5104.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-5104

INNKEEPER MINISTRIES, INC., APPELLEE, *v.* TESTA, TAX COMMR., APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Innkeeper Ministries, Inc. v. Testa,* Slip Opinion No. 2016-Ohio-5104.]

*Taxation—Real property—Charitable-use exemption—R.C. 5709.121(A)(2)— Recreational religious retreat designed for Christian leaders— Use restricted by religion—Property not eligible for exemption because use not made available on nondiscriminatory basis.*

(No. 2014-0490—Submitted December 15, 2015—Decided July 27, 2016.)

APPEAL from the Board of Tax Appeals, No. 2010-2803.

————————————

**Per Curiam.**

{¶ 1} This is an appeal from a decision of the Board of Tax Appeals ("BTA"), which reversed the tax commissioner's denial of a charitable-use exemption to property owned by Innkeeper Ministries, Inc., and ordered that the exemption be granted. The property is extensive and contains two large

residential buildings along with various recreational amenities. Innkeeper's mission is to invite religious leaders to stay at the property at no charge and enjoy the amenities, as well as free meals, as a type of spiritual retreat.

{¶ 2} The tax commissioner has appealed, setting forth five propositions of law. Among other things, the tax commissioner contends that the use of the property as a residence by a caretaker couple and the lack of quantitive evidence of its use in connection with their ministry defeats the claim for exemption. We agree, and we therefore reverse on those grounds. Because we conclude that these points are dispositive of the appeal, we do not reach the tax commissioner's other arguments.

### FACTUAL BACKGROUND

*The organization*

{¶ 3} Innkeeper Ministries, Inc., is an Ohio nonprofit with 501(c)(3) federal tax status. Robert Hartenstein is secretary/treasurer, Hartenstein's son is president, and Don Kline is a member-at-large of the board.

*The property at issue*

{¶ 4} The property consists of 71.066 acres improved with two main buildings, the Chesed Inn and the Eagle's Wing Manor. The Chesed Inn has seven bedrooms, the Manor an unspecified number; both buildings are used to accommodate guests.

{¶ 5} There is a swimming pool, basketball court, fishing ponds, and a "prayer walk" through the wooded property. The properties were donated to the ministry in four increments from 2002 through 2006. In December 2007, the parcels were combined into a single tract for tax purposes.

*Residential use, ministry, and mission*

{¶ 6} Robert and Janet Hartenstein, the caretakers, reside permanently in part of the Chesed Inn. Two other relatives have lived there for lengthy periods as well.

{¶ 7} Innkeeper takes its mission from the parable of the Good Samaritan, Luke 10:29-37, in which a Samaritan takes pity on a wounded traveler, binds his wounds, and takes him to an inn, paying the innkeeper to look after him. Innkeeper makes its amenities available free of charge to any full-time pastor, parachurch leader, Christian school educator, or missionary, and their spouses as a retreat and place of "Sabbath rest" restorative to the spirit. In addition to the recreational amenities already discussed, there is also a cabin converted into a chapel.

{¶ 8} Robert Hartenstein offers counseling in the form of listening to guests' spiritual concerns and helping them to discern God's will; he has no formal training and there are no formal sessions. The Hartensteins cook meals for all guests and take care of the premises; they accept their lodging there in lieu of monetary compensation. No charge is made for the services, but unsolicited donations are accepted.

{¶ 9} The Hartensteins advertise the services offered at the property and make them available generally on a year-round basis. But they have not succeeded in filling all the rooms at any one time. The record contains testimonial letters in support of the understanding that worship occurs on the premises.

{¶ 10} Although there is testimony and documentation relating to the mission and the hospitality offered at the property, the record does not contain financial statements or documentation of the numbers of persons served. The only mention of a number occurs when Mr. Hartenstein was asked, "Do you know how many have come seeking that type of need since the inception of the ministry?" Hartenstein replied, "We quit counseling [sic] at 11,000." In context, it is not clear whether this number refers to the number of guests who stayed or the number of persons who inquired about the services. In any event, no supporting documentation was submitted.

*Proceedings before the tax commissioner*

{¶ 11} Innkeeper filed the exemption application in 2008, seeking exemption for that year. The application cites three statutes as grounds for exemption: R.C. 5709.07(A), 5709.12(B), and 5709.121(A).

{¶ 12} The tax commissioner issued his determination on August 9, 2010, considering and denying exemption under R.C. 5709.07(A)(2), which exempts houses used exclusively for public worship; R.C. 5709.07(A)(3), which exempts church-owned property used primarily for church retreats and camps; and R.C. 5709.12(B) and 5709.121(A), which exempt property used exclusively for charitable purposes.

{¶ 13} As for R.C. 5709.07(A)(2), the commissioner found that the property was not used to "facilitate public worship in a principal, primary and essential way." Instead, the property offered only an indirect support of worship that did not qualify the property to be viewed as "used exclusively for public worship." As for R.C. 5709.07(A)(3), the commissioner found that the property did not qualify as a church retreat because it was not owned by a church and it was not used for church retreats but for "sabbaticals" for pastors and church leaders.

{¶ 14} As for charitable use, the commissioner cited the charity standard from two cases, *Highland Park Owners, Inc. v. Tracy*, 71 Ohio St.3d 405, 644 N.E.2d 284 (1994), and *Planned Parenthood Assn. v. Tax Commr.*, 5 Ohio St.2d 117, 214 N.E.2d 222 (1966). The commissioner stated that the activity at issue here did not meet the standard because Innkeeper used the property "as a home site," its facilities were "not open or available to the general public," and "any benefit to the public or mankind generally is an indirect result of the applicant's activity of providing pastors and other church leaders with a place for sabbaticals."

*Proceedings before the BTA*

**{¶ 15}** Innkeeper appealed to the BTA. At the hearing the BTA held on March 25, 2013, Innkeeper presented the testimony of Robert Hartenstein, the applicant for the exemption, a principal of Innkeeper, and permanent on-site resident on the property. In its brief at the BTA, Innkeeper abandoned its claims under R.C. 5709.07 and focused exclusively on obtaining an exemption for charitable use.

**{¶ 16}** The BTA issued its decision on February 28, 2014. The BTA first found that "Innkeeper's year round use of the subject property, in providing a place of respite for the physical and spiritual renewal of Christian leaders, without charge, [is] sufficiently charitable in nature to fall within the definition of charity set forth in *Planned Parenthood* [5 Ohio St.2d 117, 214 N.E.2d 222]." BTA No. 2010-2803, 2014 Ohio Tax LEXIS 1305, 6-7 (Feb. 28, 2014). This finding was made in a paragraph discussing the standard for determining status of the owner as a "charitable institution," and the BTA's finding equates to a finding that Innkeeper so qualified.

**{¶ 17}** Next, the BTA stated that "as a charitable institution, Innkeeper must qualify for exemption pursuant to the provisions of R.C. 5709.121(A)(2) * * *." Quoting *Cincinnati Community Kollel v. Testa*, 135 Ohio St.3d 219, 2013-Ohio-396, 985 N.E.2d 1236, ¶ 28, for the proposition that " 'the focus of the inquiry should be on the relationship between the actual use of the property and the purpose of the institution,' " the BTA concluded that the property qualified for exemption. The BTA found that Innkeeper used its property "in furtherance of or incidental to its charitable * * * purposes and not with the view to profit" within the meaning of R.C. 5709.121(A)(2).

**THE RESIDENTIAL USE OF THE PROPERTY AND THE LACK OF QUANTITATIVE EVIDENCE OF CHARITABLE USE MILITATE AGAINST EXEMPTION**

*1.    Ohio law provides a specific exemption for church retreats, but Innkeeper does not qualify*

**{¶ 18}** Earlier in these proceedings, the tax commissioner carefully considered and denied exemption under R.C. 5709.07(A)(3), which exempts "[r]eal property owned and operated by a church that is used primarily for church retreats or church camping, and that is not used as a permanent residence." Innkeeper's property at issue does not qualify under the plain terms of (A)(3) both because it is not owned by a church and because it is subject to substantial residential use by the Hartensteins. Indeed, at the hearing, Robert Hartenstein stated, "[W]e are not a church."

**{¶ 19}** Innkeeper's claim and the BTA's decision reflect a reading of the exemption for charitable use, R.C. 5709.12(B) and 5709.121, that is so expansive that it in effect grants an exemption for a residential property opened to guests with the goal of providing a spiritual retreat. The fact that an exemption exists for such retreats but only when owned by churches suggests that recognizing a charitable-use exemption here should be approached with caution. *See Church of God in N. Ohio, Inc. v. Levin*, 124 Ohio St.3d 36, 2009-Ohio-5939, 918 N.E.2d 981, ¶ 30 ("we have recognized a general principle that a property owner may not evade the limitations imposed with respect to a specific tax exemption by claiming exemption under a broad reading of other exemption statutes").

*2.  Personal and permanent residential use militates against a finding of charitable use*

**{¶ 20}** The record demonstrates that the Hartensteins permanently reside on the property at issue. The tax commissioner correctly points out that " '[r]esidence in a dwelling with a family must necessarily be a private use of the premises,' " and " '[w]here the exercise of such private rights constitutes the

6

primary use of the property, [that] property is no longer used exclusively for charitable purposes.' " *First Baptist Church of Milford v. Wilkins*, 110 Ohio St.3d 496, 2006-Ohio-4966, 854 N.E.2d 494, ¶ 21, quoting *W. Res. Academy v. Bd. of Tax Appeals*, 153 Ohio St. 133, 136, 91 N.E.2d 497 (1950). That logic has more recently been extended to the denial of an exemption for low-income housing furnished to tenants by a 501(c)(3) nonprofit organization, on the theory that the tenants' residential use means that the property use cannot be characterized as "exclusively" charitable. *See NBC-USA Hous., Inc.—Five v. Levin*, 125 Ohio St.3d 394, 2010-Ohio-1553, 928 N.E.2d 715, ¶ 6-9.

{¶ 21} In opposition, Innkeeper faults the tax commissioner's reliance on *First Baptist Church of Milford* on the grounds that the exemption claim in that case was advanced solely under R.C. 5709.12(B) directly, without recourse to R.C. 5709.121. Under the expanded definition of "exclusive charitable use" provided by R.C. 5709.121, Innkeeper contends, residential use does not defeat exemption so long as such use qualifies as purely incidental to the charitable purposes of the property owner. *See* R.C. 5709.121(A)(2); *Cincinnati Nature Ctr. Assn. v. Bd. of Tax Appeals*, 48 Ohio St.2d 122, 357 N.E.2d 381 (1976); *Cincinnati Community Kollel v. Testa*, 135 Ohio St.3d 219, 2013-Ohio-396, 985 N.E.2d 1236. While this argument is well grounded in the law, it sidesteps the most fundamental issue in this case: whether Innkeeper could qualify as a "charitable institution," a prerequisite to applying R.C. 5709.121.

{¶ 22} The flaw in Innkeeper's argument, and in the BTA's decision, is that Innkeeper cannot qualify as a "charitable institution" in this case unless its use of the property at issue, which is its *only* activity, can itself qualify as charitable. "The determination whether a property owner qualifies as a charitable institution under R.C. 5709.121 requires examination of the 'core activity' of the institution and determining whether that activity qualifies as charitable for property-tax purposes." *Rural Health Collaborative of S. Ohio, Inc. v. Testa,* 145

Ohio St.3d 430, 2016-Ohio-508, 50 N.E.3d 486, ¶ 23, citing *Dialysis Clinic*, *Inc. v. Levin,* 127 Ohio St.3d 215, 2010-Ohio-5071, 938 N.E.2d 329, ¶ 28-30; *see also Northeast Ohio Psych. Inst. v. Levin*, 121 Ohio St.3d 292, 2009-Ohio-583, 903 N.E.2d 1188, ¶ 14-15. This circumstance distinguishes Innkeeper's situation decisively from that of the claimants in *Cincinnati Nature Ctr.* and *Cincinnati Community Kollel*.

{¶ 23} In *Cincinnati Nature Ctr.*, the institution maintained a conservation center and working farm encompassing some 750 acres, and it educated thousands of students and teachers annually about ecology and the natural environment. Two houses on the property were used as residences by two naturalists who were full-time employees of the institution and as such were on call 24 hours a day to prevent damage to the property. Under the circumstances of that case, it was clear both that the institution through its activities could qualify as charitable and that the provision of housing was merely incidental to the overriding charitable purposes.

{¶ 24} In *Cincinnati Community Kollel*, 135 Ohio St.3d 219, 2013-Ohio-396, 985 N.E.2d 1236, we had in an earlier appeal determined that the Kollel qualified as an educational institution for purposes of applying R.C. 5709.121. *See Cincinnati Community Kollel v. Levin,* 113 Ohio St.3d 138, 2007-Ohio-1249, 863 N.E.2d 147. The remaining issue was whether the use of the property as residences for the Kollel's students should be regarded as a use "in furtherance of or incidental to" the Kollel's educational purposes within the meaning of R.C. 5709.121(A)(2). Because the BTA had imported additional standards beyond those prescribed by the statute, we remanded for further proceedings.

{¶ 25} Again we emphasize that Innkeeper cannot bootstrap itself into charitable status merely by claiming exemption under R.C. 5709.121 as well as under R.C. 5709.12(B) directly.

*3. Given the residential use of the property, the BTA erred by failing to require proof of the primacy of charitable hospitality*

**{¶ 26}** Like exemption applicants generally, Innkeeper bore the onus of showing that "the language of the statute 'clearly express[es] the exemption' in relation to the facts of the claim." *Anderson/Maltbie Partnership v. Levin*, 127 Ohio St.3d 178, 2010-Ohio-4904, 937 N.E.2d 547, ¶ 16, quoting *Ares, Inc. v. Limbach,* 51 Ohio St.3d 102, 104, 554 N.E.2d 1310 (1990). That burden extended to demonstrating that its use of property lay within the ambit of what has been deemed charitable by the case law. *See id*. at ¶ 22 (property used by its lessee as a community school not within the scope of exemption permissible under *Gerke v. Purcell*, 25 Ohio St. 229 (1874), because of the for-profit nature of the lease). The case-law authority already discussed is inimical to viewing residential use as charitable because that use is a private one not devoted to the good of the broader public, and "[w]here the exercise of such private rights constitutes the primary use of property," the latter is "no longer used exclusively for a charitable purpose." *W. Res. Academy*, 153 Ohio St. at 136, 91 N.E.2d 497. Thus, Innkeeper's burden of proof required a clear demonstration of the primacy of the hospitality that is extended to others over the personal, familial, and residential use made of the property.

**{¶ 27}** The BTA erred as a matter of law by failing to require the discharge of that burden of proof. Quite simply, any family can create a corporate entity and title the family residence to the corporation. But to entitle the property to exemption, an applicant must negate the inference that personal residence constitutes the primary use. The record here shows ownership by a 501(c)(3) entity, but that entity is controlled by the Hartensteins. Moreover, the accommodation of guests at no cost in a spacious residence cannot by itself turn the residence into a charity.

**{¶ 28}** The record in this case falls well short of supporting the exemption claim because it does not quantify the hospitality extended by the Hartensteins. The record is silent on certain salient points. While there is evidence that Innkeeper advertised for guests in accordance with its spiritual mission, we are not informed how many answered that call, how many were accommodated, and how many were turned away. This kind of documentation would be expected of Innkeeper as part of its ordinary diligence as a 501(c)(3) entity and an alleged charitable institution; the documentation could then have been submitted in support of its claim for exemption in this case. Its absence means that Innkeeper cannot discharge its burden of proof.

## CONCLUSION

**{¶ 29}** For the foregoing reasons, we reverse the decision of the BTA.

Decision reversed.

O'CONNOR, C.J., and PFEIFER, LANZINGER, and O'NEILL, JJ., concur.

O'DONNELL, J., dissents in an opinion that KENNEDY and FRENCH, JJ., join.

————————————

**O'DONNELL, J., dissenting.**

**{¶ 30}** Respectfully, I dissent.

**{¶ 31}** R.C. 5709.12(B) states that "[r]eal and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation * * *." And pursuant to R.C. 5709.121(A)(2), real property belonging to a charitable institution "shall be considered as used exclusively for charitable or public purposes by such institution" if it is "made available under the direction or control of such institution * * * for use in furtherance of or incidental to its charitable, educational, or public purposes and not with the view to profit." We have stated that "[s]o long as an institution is operated without any view to

10

profit and exclusively for a charitable purpose, it is a charitable institution." *Herb Soc. of Am., Inc. v. Tracy*, 71 Ohio St.3d 374, 376, 643 N.E.2d 1132 (1994).

{¶ 32} Although the General Assembly has not defined what activities constitute "charitable purposes" for purposes of R.C. Chapter 5709, we explained in *Bethesda Healthcare, Inc. v. Wilkins*, 101 Ohio St.3d 420, 2004-Ohio-1749, 806 N.E.2d 142:

> "In the absence of a legislative definition, 'charity,' in the legal sense, is the attempt in good faith, *spiritually*, *physically*, intellectually, socially and economically to advance and benefit mankind in general, or *those in need of advancement and benefit in particular*, *without regard to their ability to supply that need from other sources*, and *without hope or expectation*, if not with positive abnegation, *of gain or profit* by the donor or by the instrumentality of the charity."

(Emphasis added.) *Id*. at ¶ 32, quoting *Planned Parenthood Assn. v. Tax Commr.*, 5 Ohio St.2d 117, 214 N.E.2d 222 (1966), paragraph one of the syllabus.

{¶ 33} Applying that definition, we have recognized that advancing religion is a charitable purpose. *See, e.g.*, *True Christianity Evangelism v. Zaino*, 91 Ohio St.3d 117, 120, 742 N.E.2d 638 (2001); *Am. Commt. of Rabbinical College of Telshe, Inc., v. Bd. of Tax Appeals*, 156 Ohio St. 376, 378, 102 N.E.2d 589 (1951).

{¶ 34} In *Rabbinical College*, we considered the predecessor statute to R.C. 5709.12(B)—Section 5353 of the General Code—which stated: "Real and tangible personal property belonging to institutions used exclusively for charitable purposes, shall be exempt from taxation." 121 Ohio Laws 241, 242. We observed that the statute reflected a change from the prior law, because "the

words 'institutions of purely public charity' have now been replaced by the words 'institutions used exclusively for charitable purposes,' " and we concluded that "it is no longer necessary that an institution used exclusively for the lawful advancement of education and of religion *be open generally to the public in order to have tax exemption of property* owned and used by it exclusively for lawful educational or religious purposes." (Emphasis added.) *Id.*

{¶ 35} We therefore rejected the proposition that the charitable use exemption did not apply to an institution's property that was " 'operated for those of the Jewish faith and race' and was not 'open to the public.' " *Id.* at 378. Thus, Ohio does not mandate that property be open generally to the public in order to be exempt from taxation. This has been the law in Ohio for more than six decades.

{¶ 36} More recently, in *Herb Soc. of Am.*, 71 Ohio St.3d at 376, 643 N.E.2d 1132, we rejected the view that an organization is not charitable "because it restricts membership to selected individuals." Following *Rabbinical College*, we explained that a charitable institution "need not be open generally to the public if it promotes the lawful advancement of the charitable purpose." *Id.*

{¶ 37} Notwithstanding long-standing precedent from this court, the majority concludes that the core activities of Innkeeper Ministries, Inc., are not charitable because its property is not open to the public generally. This analysis, however, is not only inconsistent with the General Assembly's decision to broaden the charitable use exemption beyond "public charities" to include both "charitable institutions" and property "used exclusively for charitable purposes," but also is contrary to the distinction we previously acknowledged in *Herb Soc. of Am.* and *Rabbinical College*. The change in statutory language reflects the legislative intent that a charitable organization is not required to be open to the public in general but rather can seek to benefit discrete groups in particular based on a specific need for charity.

**{¶ 38}** In fact, making charity available only to a specific group may be essential to the core activity of the charitable institution, or it may be unavoidable due to the charity's lack of resources. A decision by the Girl Scouts of America, for example, to restrict membership to females would not lead us to question its status as a charitable institution, *see Girl Scouts-Great Trail Council v. Levin*, 113 Ohio St.3d 24, 2007-Ohio-972, 862 N.E.2d 493, ¶ 20; nor does a food pantry such as the Mid-Ohio Foodbank lose its charitable exemption because it limits its charity to the poor and needy rather than opening its doors to the general public.

**{¶ 39}** The majority reasons that residential use of property is necessarily a private, noncharitable use. This view, however, overlooks the fact that there are residential uses of property that are unquestionably charitable. For instance, homeless shelters and battered women shelters such as those run by the Friends of the Homeless in Columbus and the City Mission in Cleveland have received charitable exemptions notwithstanding the residential use of the property. Offering an individual a safe place to stay is an attempt to advance and benefit those in need of advancement and benefit and therefore is charity as defined by our decision in *Bethesda Healthcare*, 101 Ohio St.3d 420, 2004-Ohio-1749, 806 N.E.2d 142, at ¶ 32.

**{¶ 40}** Thus, reliance on cases involving subsidized low-cost housing or residences provided for the personal use of employees and their families is misplaced. Those cases are factually distinguishable, because those receiving a subsidy or housing as a benefit of employment are in effect paying a share of the rent for the private use of the property, and the exclusive use of the property is not charitable. *See W. Res. Academy v. Bd. of Tax Appeals*, 153 Ohio St. 133, 136, 91 N.E.2d 497 (1950) (explaining that property used for residences of faculty of a nonprofit academy was not tax exempt, because the housing was, in effect, provided in lieu of salary). But here, the property is used exclusively for a

charitable purpose, and its incidental use as a residence for its caretakers serves to facilitate that purpose.

{¶ 41} The accommodations for Innkeeper Ministries' guests are provided at no cost—thereby meeting one part of the test for charity that we articulated in *Bethesda Healthcare*, i.e., that the service is provided without expectation of gain or profit, and the residential use of the property is charitable.

{¶ 42} Moreover, in this case, the BTA noted that the charitable mission of Innkeeper Ministries is to advance religion by offering a place of "Sabbath rest" for the physical and spiritual renewal of church leaders through personal worship, prayer, meditation, reflection, and Bible study at no cost to guests and participants. BTA No. 2010-2803, 2014 Ohio Tax LEXIS 1305, 4-5 (Feb. 28, 2014). The BTA credited Innkeeper Ministries' belief that " 'Sabbath rest is most effectively achieved in a reclusive atmosphere such as that provided by Innkeeper's 71 acres located in a remote rural setting.' " *Id*. at 5, quoting Innkeeper Ministries' brief at 2. Sabbath rest cannot be achieved by opening the property to the general public or to those not in need of Sabbath rest. Thus, the fact that Innkeeper Ministries offers its facilities to church leaders is not indicative of a private use, but rather advances its goal of providing " 'services that encourage, support and edify Christian leadership, weary and, at times, wounded from their godly pursuits.' " *Id*. at 4-5, quoting the statutory transcript at 73.

{¶ 43} The majority confuses the core use of the property—the mission to advance religion by offering a place for Sabbath rest—with its incidental use as a residence for the caretakers, the Hartensteins. Providing a place for Sabbath rest necessarily includes giving the guests a place to rest and sleep, which is the primary use of the property, and therefore, having the Hartensteins reside on site serves Innkeeper's core purposes, because they cook meals for all guests, provide counseling, maintain the premises, and donate their time and energy to ensure that residents can achieve physical and spiritual renewal. More than 11,000 people

have come to Innkeeper Ministries seeking Sabbath rest; the mission is a 24 hour a day, seven day a week ministry to ensure the opportunity for rest and spiritual renewal of the guests, and the Hartensteins' residence on the premises is incidental to that mission.

{¶ 44} In my view, this issue is enlightened by *Cincinnati Nature Ctr. Assn. v. Bd. of Tax Appeals*, 48 Ohio St.2d 122, 357 N.E.2d 381 (1976), where we held that providing naturalists housing on property used as a nature center was incidental to the institution's overriding charitable purposes and therefore did not preclude the property from being tax exempt. In that case, employees lived on site to prevent damage to the property. But while allowing employees to live at a nature center that is closed to visitors after hours is only incidental to its charitable purpose of providing educational and nature experiences when it is open, the Hartensteins' residence on the property is not only incidental to Innkeeper's core purpose of advancing religion but also is essential to its purpose, because they tend to the needs of those seeking Sabbath rest, and unlike the nature center, Innkeeper is never closed.

{¶ 45} Our caselaw has recognized that property is "used exclusively" for charitable purposes if the "primary use" is charitable. *Girl Scouts-Great Trail Council*, 113 Ohio St.3d 24, 2007-Ohio-972, 862 N.E.2d 493, at ¶ 19, citing *True Christianity Evangelism*, 91 Ohio St.3d at 120, 742 N.E.2d 638, and *Moraine Hts. Baptist Church v. Kinney*, 12 Ohio St.3d 134, 135, 465 N.E.2d 1281 (1984). And whether property is used for charitable purposes is a question of fact to be decided by the BTA, not this court. *See Rural Health Collaborative of S. Ohio, Inc. v. Testa*, 145 Ohio St.3d 430, 2016-Ohio-508, 50 N.E.3d 486, ¶ 24.

{¶ 46} Although the majority recognizes that the property includes guest rooms, a chapel, and a prayer walk and does not dispute that the property serves spiritual objectives without a view to profit, it nonetheless substitutes its judgment for the BTA, disregarding the BTA's factual finding that "providing a place of

respite for the physical and spiritual renewal of Christian leaders * * * fall[s] within the definition of charity * * *." 2014 Ohio Tax LEXIS 1305, 6-7. And in doing so, it also trivializes the value of Sabbath rest by suggesting that the property is in essence a place of recreation because recreational facilities are available for guests. In fact, Innkeeper Ministries provides not only recreation, but also spiritual opportunities for its guests. This is in keeping with our explanation of charity in *Bethesda Healthcare*, 101 Ohio St.3d 420, 2004-Ohio-1749, 806 N.E.2d 142, at ¶ 32—the attempt in good faith spiritually and physically to advance and benefit those in need of advancement and benefit without expectation of gain or profit. By providing both religious and athletic facilities for its guests, Innkeeper Ministries meets our definition of charity.

{¶ 47} Pursuant to R.C. 5717.04, our role in reviewing the BTA is to determine whether its decisions are reasonable and lawful. As we acknowledged in *HealthSouth Corp. v. Levin*, 121 Ohio St.3d 282, 2009-Ohio-584, 903 N.E.2d 1179, "we do not sit as a 'super BTA,' " *id*. at ¶ 35, but rather "we defer to the BTA's factual findings if they are supported by reliable and probative evidence in the record," *Warrensville Hts. City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 145 Ohio St.3d 115, 2016-Ohio-78, 47 N.E.3d 144, ¶ 16. The BTA in this case found that Innkeeper Ministries is a charitable institution and that its property is primarily used for charitable purposes and, therefore, it is exempt from real property taxes. In my view, reliable and probative evidence in the record supports these findings. Accordingly, I dissent and would affirm the sound decision of the BTA.

KENNEDY and FRENCH, JJ., concur in the foregoing opinion.

_____

Jay C. Bennett, for appellee.

Michael DeWine, Attorney General, and David D. Ebersole and Barton Hubbard, Assistant Attorneys General, for appellant.

January Term, 2016

_____