[Cite as *Summer Rays, Inc. v. Testa*, 2017-Ohio-7901.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Summer Rays, Inc.,                         :

         Appellant-Appellant,       :           No. 17AP-32
                                            (BTA No. 2015-951)
v.                                      :                and
                                            17AP-34
Joseph W. Testa, Tax              :        (BTA No. 2015-1108)
Commissioner of Ohio,

                                    :        (REGULAR CALENDAR)
         Appellee-Appellee.

                                    :

D E C I S I O N

Rendered on September 28, 2017

**On brief:** *Ronald B. Noga*, for appellant. **Argued:** *Ronald B. Noga.*

**On brief:** *Michael DeWine*, Attorney General, *Daniel W. Fausey,* and *Kody R. Teaford*, for appellee. **Argued:** *Kody R. Teaford.*

APPEALS from the Ohio Board of Tax Appeals

LUPER SCHUSTER, J.

{¶ 1} Appellant, Summer Rays, Inc. ("Summer Rays"), appeals from a decision of the Ohio Board of Tax Appeals ("BTA") affirming the final determination of appellee, Joseph W. Testa, Tax Commissioner of Ohio ("commissioner"), denying Summer Rays' request for property tax exemption pursuant to R.C. 5709.12. For the following reasons, we affirm.

## I. Factual and Procedural Background

{¶ 2} Summer Rays is an Ohio not-for-profit corporation with Internal Revenue Code 501(c)(3) status, and Chuck Kirk is the corporation's president and executive director. Summer Rays provides "Christian Access Living homes that are safe and

affordable" to individuals transitioning from lives of addiction. (Summer Rays Mission Statement, attached to Dec. 19, 2014 Summer Rays Submission to Tax Commissioner.) In addition to providing sleep accommodations, Summer Rays provides spiritual support services, financial planning services, an on-site library, and other facilities and services. Summer Rays owns the property at 7480 East Main Street, Reynoldsburg, Ohio ("7480 East Main Street"), and it operates a fitness studio, "Rev Studio," at that location. Rev Studio is open to the public and is available for use by participants of Summer Rays' residential program. Summer Rays also owns approximately 20 residential properties that are used as part of its program.

{¶ 3} In December 2014, Summer Rays applied for property tax exemption for 7480 East Main Street pursuant to R.C. 5709.12, the charitable use exemption. The Ohio Department of Taxation ("department") designated the matter as department case No. WE 2704 and requested that Summer Rays provide additional information regarding its use of 7480 East Main Street. Summer Rays complied with the request and submitted a package of documents regarding the use of that property. On May 27, 2015, the commissioner issued a final determination regarding case No. WE 2704. The commissioner concluded that the 7480 East Main Street property does not qualify for property tax exemption under R.C. 5709.12.

{¶ 4} On July 22, 2015, the BTA received a notice of appeal indicating Summer Rays was challenging the commissioner's final determination in case No. WE 2704. The BTA docketed the notice of appeal as BTA case No. 2015-951. An identical additional copy of Summer Rays' notice of appeal challenging the commissioner's final determination in case No. WE 2704 was also filed with the BTA on July 22, 2015, and the BTA separately docketed that copy of the notice of appeal and assigned it BTA case No. 2015-1108. It is unclear from the record why identical copies of Summer Rays' notice of appeal were separately submitted and docketed as case Nos. 2015-951 and 2015-1108.

{¶ 5} On November 20, 2015, the commissioner filed a "motion to consolidate or dismiss and to withdraw the statutory transcript." The request states:

> The statutory transcript that the Commissioner filed on September 8, 2015 in Case No. 2015-951 includes materials considered in issuing final determinations for two cases before the Commissioner, namely DTE Case Nos. WE 1596 and WE 2704. However, only DTE Case No. WE 1596 is at

issue in BTA Case No. 2015-951. Accordingly, the Commissioner respectfully moves this Board to withdraw his statutory transcript filed on September 8, 2015 and forthwith substitute a new transcript with only those materials considered in issuing a final determination for DTE Case No. WE 1596, as R.C. 5717.02 provides.

In addition, the Commissioner respectfully moves this Board to consolidate BTA Case Nos. 2015-951 and 2015-1108 or, alternatively, dismiss BTA Case No. 2015-1108 as duplicative of BTA Case No. 2015-951. Both cases have identical notices of appeal from the Commissioner's final determination on DTE Case No. WE 1596. Since the cases are duplicative of one another, there is no need to have separately pending cases on the same matter.

The BTA granted both the motion to consolidate the appeals and the motion to substitute a transcript.

{¶ 6} On September 14, 2016, a hearing was held before a BTA hearing examiner regarding BTA case Nos. 2015-951 and 2015-1108. At the hearing, the Attorney General's office represented the commissioner, and, Kirk, Summer Rays' president and executive director appeared without counsel. Evidence was presented regarding Summer Rays, generally, and Rev Studio, the fitness facility operated under the Summer Rays umbrella at the particular property at issue, 7480 East Main Street. In late September 2016, the commissioner filed a complete transcript of the record of proceedings before the commissioner, including all evidence considered, in case No. WE 2704.

{¶ 7} On December 13, 2016, the BTA issued its decision in BTA case Nos. 2015-951 and 2015-1108. The BTA affirmed the commissioner's denial of Summer Rays' request for a tax exemption for the 7480 East Main Street property. Summer Rays timely appealed to this court from the decision of the BTA. Two appeals were docketed, and this court consolidated the appeals. Before the appeals were briefed, Summer Rays filed a "motion to remand to correct defective record." (Mar. 2, 2017 Appellant's Mot.) In support, Summer Rays asserted that the commissioner and the BTA mishandled his applications for exemption and the corresponding appeals, and that a remand was necessary to correct the various errors resulting from that mishandling. This court denied Summer Rays' motion to remand the appeals for purposes of correcting the record, and the parties then submitted their briefs regarding the appeals.

## II. Assignments of Error

{¶ 8}   Summer Rays assigns the following errors for our review:

[1.] The Board of Tax Appeals acted unreasonably and unlawfully in denying Appellant's exemption claim on the ground that it had failed to meet its Burden of Proof based on an erroneous interpretation of the exclusive use element of O.R.C. Section 5709.12 that any contribution by Appellant's residents no matter how small or indirect defeated Appellant's charitable use.

[2.] The Board of Tax Appeals erred as a matter of law by 1) affirming a Final Determination of the Tax Commissioner which is defective on its face as it references and pertains to two separate and distinct properties which were the subject of separate applications and 2) in the process of consolidating two separate appeals, eliminating the statutory transcript it had ordered consolidated pertaining to WD 1596 while issuing its Decision based on an entirely different statutory transcript pertaining to WD 1204 [sic].

## III.  Discussion

### A.  First Assignment of Error – Tax Exemption under R.C. 5709.12

{¶ 9}   Summer Rays' first assignment of error challenges the BTA's substantive determination that the commissioner correctly concluded that the 7480 East Main Street property does not qualify for tax exemption under R.C. 5709.12.  Summer Rays argues that the BTA erroneously reasoned that, because Summer Rays generates some revenue by charging a program fee, it legally cannot constitute a charitable institution.  This assignment of error lacks merit.

{¶ 10} The BTA has jurisdiction over appeals from final determinations of the commissioner.  R.C. 5717.02.  An appellate court may reverse a BTA decision only "when it affirmatively appears from the record that such decision is unreasonable or unlawful." *Witt Co. v. Hamilton Cty. Bd. of Revision*, 61 Ohio St.3d 155, 157 (1991).  Thus, legal conclusions are reviewed de novo. *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, ___ Ohio St.3d ___, 2017-Ohio-4415, ¶ 7; *see Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231, 232 (2001) ("[W]e will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion.").  As to factual findings, an appellate court may not substitute its judgment for that of the BTA. *Bethesda Healthcare, Inc. v. Wilkins*, 101 Ohio St.3d 420,

2004-Ohio-1749, ¶ 18.   However, facts determined by the BTA must be supported by sufficient probative evidence.  *First Baptist Church of Milford, Inc. v. Wilkins*, 110 Ohio St.3d 496, 2006-Ohio-4966, ¶ 9.

{¶ 11} In Ohio, all real property is subject to taxation unless it is expressly exempted.  R.C. 5709.01(A).  Because exemption is the exception to the general rule, statutes granting exemptions must be strictly construed.  *Seven Hills Schools v. Kinney*, 28 Ohio St.3d 186, 186 (1986).  It is the taxpayer's burden to prove entitlement to an exemption.  *250 Shoup Mill, L.L.C. v. Testa*, 147 Ohio St.3d 98, 2016-Ohio-5012, ¶ 24.  The policy rationale for granting tax exemptions is that the recipient's operation is a present benefit to the general public that justifies the loss of tax revenue.  *White Cross Hosp. Assn. v. Bd. of Tax Appeals*, 38 Ohio St.2d 199, 201 (1974).

{¶ 12} Summer Rays claims that 7480 East Main Street should be exempt from taxation pursuant to R.C. 5709.12(B), which states in pertinent part:  "Real * * * property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation[.]"   For the purpose of R.C. 5709.12(B), when the property at issue "belong[s] to, *i.e.* [is] *owned by*, a charitable or educational institution or the state or a political subdivision," R.C. 5709.121 defines the term "used exclusively for charitable * * * purpose."  (Emphasis sic.)  *First Baptist Church of Milford, Inc.* at ¶ 15; *see Dialysis Clinic, Inc. v. Levin*, 127 Ohio St.3d 215, 2010-Ohio-5071, ¶ 22 (when the property owner is a "charitable or educational" institution, R.C. 5709.121 "links certain property uses to R.C. 5709.12(B)'s exclusive-charitable-use exemption").  R.C. 5709.121 does not, however, "itself grant any exemption."  *First Baptist Church of Milford, Inc.* at ¶ 16.  "Special treatment under R.C. 5709.121 depends on the owner's qualifying as a 'charitable or educational' institution."  *Dialysis Clinic, Inc.* at ¶ 22.  Thus, R.C. 5709.121 "has no application to noncharitable institutions seeking tax exemption under R.C. 5709.12."  *First Baptist Church of Milford, Inc.* at ¶ 15.  Consequently, in analyzing whether a property is exempt under the charitable use provisions, tax authorities first must determine whether the institution is a charitable institution.  *Olmsted Falls Bd. of Edn. v. Tracy*, 77 Ohio St.3d 393, 396 (1997).

{¶ 13} Even though Summer Rays has federal tax-exempt status under Internal Revenue Code 501(c)(3), that fact is not determinative of whether it is a "charitable

institution" under Ohio law. *Dialysis Clinic, Inc.* at ¶ 28. "The determination whether a property owner qualifies as a charitable institution under R.C. 5709.121 requires examination of the 'core activity' of the institution and determining whether that activity qualifies as charitable for property-tax purposes." *Rural Health Collaborative of S. Ohio, Inc. v. Testa*, 145 Ohio St.3d 430, 2016-Ohio-508, ¶ 23, citing *Dialysis Clinic, Inc.* at ¶ 28-30. Whether an applicant qualifies as a "charitable institution" is "primarily an issue of fact, the determination of which lies within the province of the taxing authorities." *Rural Health Collaborative of S. Ohio, Inc.* at ¶ 24; *see Summit United Methodist Church v. Kinney*, 7 Ohio St.3d 13, 15 (1983).

{¶ 14} " '[C]harity,' in the legal sense, is the attempt in good faith, spiritually, physically, intellectually, socially and economically to advance and benefit mankind in general, or those in need of advancement and benefit in particular, without regard to their ability to supply that need from other sources, and without hope or expectation, if not with positive abnegation, of gain or profit by the donor or by the instrumentality of the charity." *Planned Parenthood Assn. v. Tax Commr.*, 5 Ohio St.2d 117 (1966), paragraph one of the syllabus. "That one or more persons receiving the benefits of a charitable institution have the means, in whole or in part, to purchase those benefits in the market place or that some consideration is exacted from them on receipt of the benefits does not detract from the charitable character of the institution." *Id.* at paragraph three of the syllabus. However, "[a]n institution qualifies as a charitable institution when its core activities involve the provisions of its services 'on a nonprofit basis to those in need, without regard to race, creed, or ability to pay.' " *Craftsmen Recreation Club, Inc. v. Tax Commr. of Ohio*, 9th Dist. No. 27357, 2015-Ohio-1247, ¶ 9, quoting *Church of God in N. Ohio, Inc. v. Levin*, 124 Ohio St.3d 36, 2009-Ohio-5939, ¶ 19. Ultimately, "[w]hether an institution renders sufficient services to persons who are unable to afford them to be considered as making charitable use of property must be determined on the totality of the circumstances." *Bethesda Healthcare, Inc.* at ¶ 39.

{¶ 15} Here, the BTA found that Summer Rays is not a charitable institution. Contrary to Summer Rays' argument, the BTA did not find that any contribution, no matter how small, from program participants defeats its possible status as a charitable institution. Instead, the BTA based its finding that Summer Rays is not a charitable

institution on the fact that all participants must pay the moderately priced weekly program fee, either in cash or with labor that benefits the institution and Kirk. This finding is supported by the record. Evidence demonstrated that Summer Rays charges a mandatory program fee starting at $100 per week for each participant. The cost of the program depends on the type of accommodations: a shared room is $100 per week, a private room is $125 per week, and a couple's suite is $150 per week. Further, the participants in the program must sign a form acknowledging that Summer Rays "is NOT a free housing program." (Summer Rays House Rules, attached to Dec. 19, 2014 Summer Rays Submission to Tax Commissioner.) While not all participants pay the weekly program fee in cash, those participants who cannot fully pay with cash must provide labor for the benefit of Summer Rays and Kirk. Thus, Summer Rays does not provide its program to participants regardless of their ability to pay.

{¶ 16} Even though the evidence supports the BTA's finding that Summer Rays is not a charitable institution under R.C. 5709.121, and thus special treatment under that statute is not available, 7480 East Main Street would be exempt from tax under R.C. 5709.12 if Summer Rays could demonstrate that its activity at that particular property constitutes an exclusively charitable use of the property. *See Dialysis Clinic, Inc.* at ¶ 36 ("It is well established that even if it does not qualify as a charitable institution, [a taxpayer] would be entitled to exemption from tax if it showed that the operations at a particular facility constitute an exclusively charitable use of that particular parcel of real property."). For the purpose of R.C. 5709.12, the term "used exclusively," means "primary use, not secondary or ancillary." *Church of God in N. Ohio, Inc.* at ¶ 22; *True Christianity Evangelism v. Zaino*, 91 Ohio St.3d 117, 121 (2001).

{¶ 17} The BTA found that Summer Rays primarily uses 7480 East Main Street to operate Rev Studio, a personal training business. The record supports this finding. The evidence demonstrated that Summer Rays offers personal training at Rev Studio to the general public and to Summer Rays program participants. The Summer Rays personal trainer at Rev Studio testified that pricing for the general public was based on suggested donation amounts. However, the BTA reasonably was not persuaded by that characterization of payments for personal training services at Rev Studio, as other evidence demonstrated that there is a market rate "Membership Fee Schedule" for

members of the general public. (Rev Studio Membership Fee Schedule, attached to Summer Rays Feb. 15, 2015 Submission to Dept. of Taxation.) Additionally, although Summer Rays program participants are not charged an additional Rev Studio fee beyond the mandatory general program fee starting at $100 per week (paid either in cash or labor), their eligibility to use the facility is essentially contingent on their payment of that weekly fee. In sum, there is no evidence that Summer Rays has provided personal training services for free to anyone. Thus, evidence supported the BTA's finding that 7480 East Main Street was not primarily used for charitable purposes.

{¶ 18} Accordingly, we overrule Summer Rays' first assignment of error.

### B. Second Assignment of Error – Administrative Handling of Requests for Exemption

{¶ 19} Summer Rays' second assignment of error contends it was error for the BTA to affirm the final determination of the commissioner because the BTA and the commissioner mishandled its exemption applications and the corresponding appeals from the denials of its applications. Summer Rays claims that it has been materially prejudiced by actions of the BTA and the commissioner that "confused" and "corrupted" the record. (Appellant's Brief at 17.) In particular, Summer Rays argues that the commissioner's final determination regarding case No. WE 2704 contains a prejudicial error because the commissioner misidentified the parcel under consideration. We disagree.

{¶ 20} Summer Rays is correct that the commissioner's May 27, 2015 final determination regarding case No. WE 2704 contains a mistake regarding the parcel number at issue. In the factual background section of that final determination, the commissioner mistakenly stated that the property located at 7480 East Main Street is parcel No. 060-003978-00. The property at 7480 East Main Street is actually parcel No. 060-000081-00. However, when the reference to parcel No. 060-003978-00 is considered in the context of the entire final determination, it is clear that the mistaken reference to that parcel was merely a scrivener's error. The substance of that final determination concerns the property located at 7480 East Main Street, the site of Rev Studio.

{¶ 21} Summer Rays also argues that it has been prejudiced by the BTA's mishandling of its administrative appeals from separate final determinations of the

commissioner regarding case Nos. WE 1596 and WE 2704.  According to Summer Rays, it filed two separate applications for exemption, one regarding parcel No. 060-000081-00 (the 7480 East Main Street property), and another regarding parcel Nos. 060-003978-00 (a property located on Clymer Drive) and 060-001000-00 (a property located on Graham Road).  Summer Rays asserts that the commissioner issued separate final determinations regarding these properties, including one in case No. WE 1596 pertaining to 060-003978-00 and 060-001000-00.  However, the only final determination in the administrative record before this court pertains to case No. WE 2704 and parcel No. 060-000081-00.

{¶ 22} We are unpersuaded by Summer Rays' argument that the BTA's actions have prejudiced his challenge to the final determination in case No. WE 2704.  In November 2015, the commissioner moved to consolidate case Nos. 2015-951 and 2015-1108, or, in the alternative, to dismiss case No. 2015-1108 as duplicative of case No. 2015-951.  In support of its motion, commissioner asserted that both cases had identical notices of appeal from the final determination in case No. WE 1596.  The commissioner also requested the filing of a substituted transcript limited to only those materials considered in issuing the final determination in case No. WE 1596.  Thus, the commissioner's motion mistakenly referenced case No. WE 1596 as being the subject of Summer Rays' notices of appeal that were assigned BTA case Nos. 2015-951 and 2015-1108.  The BTA granted the motion to consolidate and the motion to substitute the transcript.  Even though technically the BTA granted the commissioner's request only to file the transcript from case No. WE 1596, the transcript that the commissioner actually subsequently filed in case Nos. 2015-951 and 2015-1108 related to the commissioner's final determination regarding case No. WE 2704, the subject of Summer Rays' duplicative notices of appeal.  Thus, any BTA error in ordering the filing of the case No. WE 1596 transcript in case Nos. 2015-951 and 2015-1108 was inconsequential because the proper transcript ultimately was filed and considered in those BTA cases.

{¶ 23} Summer Rays further argues that its appeal regarding case No. WE 1596 has been "lost in the administrative shuffle."  (Appellant's Brief at 21.)  The certified BTA record does not include a notice of appeal from a final determination regarding case No. WE 1596, but it does include an August 5, 2015 letter to the BTA from Kirk, on behalf of Summer Rays, thanking the BTA for its "speedy reply to [his] appeal packets for WE 1596

and WE 2704." The letter further states that he "would like to request a hearing for both of [his] case packets that [he] submitted on July 22, 2015 to both" the BTA and the commissioner. The contents of this letter and its reference to case No. WE 1596 support Summer Rays' assertion that it attempted to (or at least intended to) appeal from two separate final determinations of the commissioner. We also note that Summer Rays attached in support of its motion to remand filed in this court what appears to be a July 22, 2015 time-stamped copy of a notice of appeal filed with the BTA regarding case No. WE 1596. Despite the apparent existence of this document, the commissioner argues there was never an appeal properly filed regarding a final determination as to case No. WE 1596. Conversely, Summer Rays contends that the BTA improperly did not proceed forward with his appeal regarding case No. WE 1596.

{¶ 24} Regardless of whether Summer Rays invoked the jurisdiction of the BTA as to a final determination regarding case No. WE 1596, or whether the BTA failed to take appropriate administrative action with respect to that appeal, those issues are not before this court in this appeal. According to Summer Rays, case No. WE 1596 involved properties other than 7480 East Main Street. While any BTA decision regarding case No. WE 1596 may parallel, to some degree, the BTA's analysis regarding the exemption of the 7480 East Main Street property, the matters would be separate and distinct. The BTA fully considered Summer Rays' appeal from the final determination regarding 7480 East Main Street, and our review of the BTA's decision regarding that property is not limited due to any action of the BTA concerning case No. WE 1596.

{¶ 25} For these reasons, we overrule Summer Rays' second assignment of error.

## IV. Disposition

{¶ 26} Having overruled Summer Rays' first and second assignments of error, we affirm the decision of the Ohio Board of Tax Appeals.

*Decision affirmed.*

BROWN and BRUNNER, JJ., concur.

————————————